[No. 27577.  Department Two.  March 28, 1940.]

*In the Matter of the Estate of* FREDERICK J. WOOD,
*Deceased.*

WARREN B. WOOD *et al., Appellants,* v. THE ROYAL BANK
OF CANADA *et al., Respondents.*[1]

*W. H. Abbott (Harold Lant, Frank E. Holman,* and
*Lucien F. Marion,* of counsel), for appellants.

*Preston, Thorgrimson & Turner, McMicken, Rupp
& Schweppe, Evans, McLaren & Lane,* and *Walter B.
Whitcomb,* for respondents.

GERAGHTY, J.—The controversy in this case grows
out of the transfer, in September, 1930, by Frederick J.

[1] Reported in 100 P. (2d) 397.

Wood, now deceased, of certain shares of the capital stock of the E. K. Wood Lumber Company and the Redwood Highlands Company, Limited, to his children, Warren B. Wood and Marian Wood Sefrit, alleged to have been made with a fraudulent intent to delay and hinder his creditors.

Frederick J. Wood, a resident of Bellingham, was a large operator in timber and mill properties. He was president of the E. K. Wood Lumber Company, a California corporation, and owned, as his separate property, 1,561,725 shares of its capital stock, of the par value of one dollar a share. His wife, Anna Bale Wood, owned, as her separate property, 805,612 shares of that stock, and the spouses held, as community property, 883,575 shares. He also owned, as his separate property, 1,067½ shares of the capital stock of the Redwood Highlands Company, Limited, worth one hundred dollars a share, its par value. The E. K. Wood Lumber Company was a prosperous concern and paid monthly dividends of one-sixteenth of one per cent on the par value of the stock.

Wood, with Edward G. English, another lumberman with large interests, had organized a British Columbia corporation known as Wood & English, Limited. Half of this company's stock was the community property of English and wife, Alice K. English, and the other half the community property of Wood and wife. This company, in 1924, issued its seven per cent bonds, in the aggregate amount of one million dollars, secured by a mortgage upon the company's tangible assets, the Yorkshire & Canadian Trust, Limited, being named as trustee for the bondholders in the mortgage deed of trust. The bonds were also signed by Wood and English and by their wives as co-makers. At the time of the questioned transfer in September, 1930, bonds of this

issue, amounting, in round figures, to $704,000, were outstanding.

F. J. Wood and E. G. English were also obligated to the Royal Bank of Canada and to other banks, on account of other debts of Wood & English, to the amount of eight hundred thousand dollars. Seven hundred and fifty thousand shares of the E. K. Wood stock owned by Wood and wife as community property had been pledged to secure these bank debts. E. G. English had also pledged a considerable number of shares of stock in companies in which he was interested to secure the same bank debts.

The financial requirements of Wood & English had made a heavy drain upon the resources of F. J. Wood and E. G. English. The corporation sustained heavy losses during the years 1927 to 1930, inclusive, aggregating more than $750,000. In the Federal income tax return made by F. J. Wood for the year 1930, he stated that the company was insolvent and that its stock held by himself and wife had been written off as a total loss, in the sum of $817,559.98. It is further stated in the return that, aside from the bond issue and $150,000 of collateral gold notes issued by the company and unpaid, and other contingent liabilities, the company's liabilities exceeded its current assets by over $1,265,000; and that the shareholders had offered its property for the amount of its debts, exclusive of the debts owing to themselves, but had found no purchaser.

May 11, 1930, Anna Bale Wood died testate. With the exception of a few minor bequests, the whole of her estate was left to Warren B. Wood and Marian Wood Sefrit, only children of herself and Mr. Wood. The husband was named in the will as executor and qualified as such. The property of the estate was appraised at $565,740.16; of this amount, $483,367.20 represented the value of the shares of E. K. Wood Lumber Com-

pany stock owned by the deceased as her separate property, appraised at sixty cents a share. The remainder of her estate was appraised at $82,372.96. With the exception of personal effects of small value, this amount represented her half interest in the community property, which included 133,575 unpledged shares of the E. K. Wood Lumber Company stock; the remainder of that stock owned by the community, 750,000 shares, had been pledged, as we have seen, to various banks to secure indebtedness of Wood & English.

In addition to its liability on the outstanding obligations of Wood & English, for which claims were filed against the estate, claims were also filed by the executors of the estate of E. G. English and by Alice K. English, individually, for the contingent liability of the Wood estate for any sums they might be required to pay in excess of their just share of the Wood & English obligations. F. J. Wood and his community estate were liable for all this indebtedness, but the separate estate of Mrs. Wood was liable only on the seven per cent bond issue. The shares of the E. K. Wood Lumber Company stock pledged as security for the bank indebtedness were not given any value by the appraisers as an asset of the Anna Bale Wood estate, in view of the fact that the debts for which the stock was pledged might exhaust the security. The value of the stock of Wood & English was appraised as *nil*.

Edward G. English died February 23, 1930, leaving a will in which his wife, Alice K. English, and Norman English and two others were named as executors. All of his estate was community property, the whole being appraised at $1,842,661.27, without taking into account outstanding indebtedness. It appears, however, from notations in the inventory that stocks appraised at approximately one million dollars had been pledged to

secure either the indebtedness of Wood & English or the indebtedness of E. G. English.

It is recited in the inventory that one-half of the common and preferred stock of Wood & English owned by E. G. English, appraised at $37,500, had been pledged to Yorkshire & Canadian Trust, Limited, to secure the bond issue. There is also included in the inventory an item for money loaned to Wood & English, amounting to $301,640.70 and appraised at $200,000.

Claims against the English estate amounted to $1,-746,729.92. At least $1,500,000 of these claims represented the corporate obligations of Wood & English, for which E. G. English and F. J. Wood were liable. Since several of the items listed and appraised in the inventory of the English estate as being of considerable value were, in fact, of little or no value, it would seem, on the face of the record, that his indebtedness, without taking into account his right to contribution from his co-obligors, F. J. Wood and wife, exceeded the value of his property; for instance, the Wood & English stock and that company's indebtedness to the estate are appraised as of the value of $237,500. We have seen that F. J. Wood, in his income tax return for the year 1930, wrote off as a complete loss his stock in the company. Mr. Powell, one of the attorneys for the English estate, who had examined its files, testified that, in the Federal estate tax return made by the estate, its claim against Wood & English was listed as of no value, as was the estate's interest in that company's stock.

In September, 1930, F. J. Wood summoned his son, Warren B., to Bellingham. The son was then vice-president of the E. K. Wood Lumber Company and lived in Los Angeles. Upon his arrival, the father called the son and Marion Wood Sefrit, his daughter, into a family conference and offered to exchange 811,-

725 shares of the E. K. Wood Lumber Company stock and 1,067½ shares of Redwood Highlands Company stock, all owned by him as his unpledged separate property, for the children's interest in their mother's estate. Little discussion seems to have been had in respect to the transaction. Warren B. Wood testified:

"He called my sister and me together, and said he wanted to buy out our interest in our mother's estate. Since Mr. English had died, he was spending more and more of his time with Wood & English, and that he would like to do with the stock as he saw fit, without regard to my sister or me, or our children, that is, the Wood & English stock, and he would give 811,725 shares of E. K. Wood Lumber Company stock, separately owned by him, share and share alike, and 1067½ shares of Redwood Highland stock, separately owned by him. He had worked this out and considered it a very fair deal. He stated he worked it out and considered it a very fair deal. That was about all there was to it."

He testified that he and his sister talked it over in the room while they were there and, "as I remember, I told my sister that if father considered it a fair deal, I would accept it, and she said the same, . . ."

On the afternoon of the same day, he accompanied his father to the office of Mr. Abbott, the father's attorney, who was given instructions to prepare an agreement to effectuate the transfer. The agreement was prepared, and executed September 26, 1930, and some time thereafter was placed of record in the office of the county auditor of Whatcom county.

June 22, 1937, F. J. Wood died, leaving a will providing that, after payment of his debts and funeral expenses, the residue of his estate should go to his children, Warren B. Wood and Marian Wood Sefrit, share and share alike. Wood's son, Warren B., and son-in-law, Charles L. Sefrit, were named as executors. The will was admitted to probate by the superior court

of Whatcom county, and, in due course, the executors filed an inventory and appraisal of the property of the estate, and thereafter their first report and petition for hearing thereon.

The estate was appraised as of the net value of $621.82, being cash held in salary account of the E. K. Wood Lumber Company's Anacortes office and a gold watch appraised at ten dollars. The remainder of the shares of the E. K. Wood Lumber Company stock owned by the deceased as his separate property after the questioned transfer to his children had been pledged to secure the debts of Wood & English. The estate's equity in this pledged stock was appraised as of no value. The value of the E. K. Wood Lumber Company stock was stated by the appraisers to be twenty cents a share.

The Anna Bale Wood estate had not been closed and, upon F. J. Wood's death, Charles L. Sefrit had been named as administrator of the estate with the will annexed *de bonis non.* Wood's interest in that estate was appraised as having no value.

July 8, 1938, the executors of the F. J. Wood estate filed their first report exhibiting the condition of the estate. The stocks of the E. K. Wood Lumber Company and the Redwood Highlands Company transferred by deceased to his children in 1930, were not included in either the inventory or first report.

Exceptions were filed to this report by the Royal Bank of Canada, the Yorkshire & Canadian Trust, Limited, the executors of the estate of E. G. English, and by Alice K. English, individually, all of whom had filed claims against the estate. The excepting creditors protested the failure of the executors to inventory, as an asset of the estate, the stock transferred by Wood on September 26, 1930, charging that the transfer was fraudulent and void as to them; and that the relation-

ship of the executors to the parties involved in that transaction made an impartial administration of the estate by them impossible. Removal of the executors and the appointment of an administrator with the will annexed *de bonis non* was asked, as well as an order restraining Warren B. Wood and Marian Wood Sefrit from disposing of the stock transferred to them pending final disposition of the issue raised by the exceptions.

After a show cause order had been issued, the court made an order restraining the transfer of the stock as prayed for. The executors made answer to the exceptions, and Warren B. Wood and Marian Wood Sefrit appeared specially by demurrers and motions to quash the restraining order. October 28, 1938, the court made an order overruling the motions and demurrers. The order further adjudged that the court had no jurisdiction in the estate proceeding, or upon the exceptions, to try title to the shares involved in the questioned transfer; and that

" . . . no order, ruling, judgment or decree made or entered herein or during the proceeding upon the aforesaid exceptions to the report of the executors of the above estate, shall, as affecting said Warren B. Wood or Mrs. Charles L. Sefrit, be *res adjudicata* of their right or title to said shares of stock or as to the nature or character of the transaction whereby said shares were transferred to them; . . . it being the purpose and intent of this order that the rights, except as herein otherwise stated, of said Warren B. Wood and Mrs. Charles L. Sefrit and each of them upon the question of the alleged fraudulent transfer to them of said shares of stock shall be in no way affected or determined in the above entitled proceeding or the proceedings upon the aforesaid exceptions, and to preserve to the said Warren B. Wood and Mrs. Charles L. Sefrit their full and complete rights to an independent suit or proceeding for the determination of said matters."

The court, March 22, 1939, after trial of the issues raised by the exceptions and answers of the executors, entered the final order from which the present appeal is taken by the executors. The order found that the estate of F. J. Wood was insolvent, and that the executors and their attorney had knowledge of the fact, or the means of acquiring knowledge of such facts as would have informed them, that there was probable cause to believe that other assets should be inventoried, particularly the stock involved in the questioned transfer by the deceased, as to which there was probable cause to believe that the conveyance was made in fraud of creditors; that, in the proper discharge of their duties, the executors should have inventoried the stock and the dividends thereon; that, by reason of their relationship to the transferees, the executors were not in a position to proceed to take any action looking to the recovery of the stock, dividends, and other assets in a manner which would be practicable or efficient; and that, under all the circumstances, the executors should be removed and administrator with the will annexed *de bonis non* appointed in their stead to proceed with the administration of the estate and particularly to ·take appropriate action seeking recovery of the shares of stock transferred by the deceased.

The order removed the executors and appointed H. C. Heal as administrator with the will annexed *de bonis non*, who was· directed to inventory, as additional assets of the estate, the 811,725 shares of the E. K. Wood Lumber Company (reduced to 608,793.75 shares by reason of the reduction of the amount of the corporation's capital shares) and the 1,067½ shares of Redwood Highlands Company. The administrator was · required also to inventory accrued dividends on the transferred stock, as well as a claim for house rental from Charles L. Sefrit and wife and a claim for the

fees due the deceased as executor of the estate of Anna Bale Wood. The administrator was authorized and directed to institute and prosecute to conclusion a suit against Warren B. Wood and Marian Wood Sefrit for recovery of the transferred shares, together with the dividends accrued thereon.

The executors will hereafter be referred to as appellants, and the excepting creditors as respondents.

It is seen that the trial court was careful in its orders to limit the issue to the question whether there was probable cause to believe that the challenged conveyance of stock, in September, 1930, was made in fraud of the rights of the respondents. If the evidence was sufficient to raise a question as to the *bona fides* of the transfer, it is obvious that, in view of their interest and relationship, the appellants would be in an untenable position, and the court would be justified in substituting in their stead some disinterested person. This result would follow independently of any positive wrongdoing on their part.

Rem. Rev. Stat., § 1444 [P. C. § 9960], provides, among other things, that, where any executor or administrator has wrongfully neglected the estate, "or has neglected to perform any acts as such executor or administrator, or for any other cause or reason which to the court appears necessary," the court shall have power and authority, after citation and hearing, to revoke the letters.

Of this section, we said, in *In re Wolfe's Estate*, 186 Wash. 216, 57 P. (2d) 1066, that it reposes in the trial court a wide discretion, which should not be controlled by this court in the absence of evidence clearly establishing its abuse, and that this principle was peculiarly applicable in a case where the estate is insolvent and the claims of creditors are paramount. Whatever the financial condition of F. J. Wood at the time the ques-

tioned conveyance was made, it must be conceded that, when he died seven years later, he left an insolvent estate.

With respect to the recovery of property fraudulently conveyed by a decedent, Rem. Rev. Stat., § 1523 [P. C. § 9891], provides:

"When there shall be a deficiency of assets in the hands of an executor or administrator, and when the deceased shall in his lifetime have conveyed any real estate, or any rights, or interests therein, with intent to defraud his creditors or to avoid any right, duty or debt of any person, or shall have so conveyed such estate, which deeds or conveyances by law are void as against creditors the executor or administrator may, and it shall be his duty to, commence and prosecute to final judgment any proper action for the recovery of the same, and may recover for the benefit of the creditors all such real estate so fraudulently conveyed, and may also, for the benefit of the creditors, sue and recover all goods, chattels, rights and credits which may have been so fraudulently conveyed by the deceased in his lifetime, whatever may have been the matter of such fraudulent conveyance."

In *Marks v. Coats,* 37 Ore. 609, 62 Pac. 488, a case construing a similar statute, the supreme court of Oregon said:

"Under this section we conceive the law to be that, where the estate of the deceased is insolvent, and it appears that he made a conveyance of land in his lifetime, which there is reasonable ground to believe fraudulent, the creditors have a right to insist that the administrator shall proceed as directed by the statute; and if he refuses to do so, or if his personal interests are such as to prevent him from doing his official duty in this regard, he is not a suitable person to be intrusted with the duties of the office, and should be removed: *In re Mills' Estate,* 22 Or. 210 (29 Pac. 443); *Putney v. Fletcher,* 148 Mass. 247 (19 N. E. 370); *Kellberg's Appeal,* 86 Pa. St. 129. We do not deem this a proper proceeding in which to try the question as to

whether the conveyances from Thomas Coats to his children were in fact void as to creditors. It is sufficient, for the purposes of this case, that there is reasonable ground to believe them void, and that the respective interests of the appellant and creditors are so adverse that he cannot fairly represent both in a suit to determine the validity of such conveyances."

The record is voluminous, and the briefs deal exhaustively with questions not now before us for decision. If we were to follow the arguments of counsel to a conclusion, the result would be a prejudgment of the issues in any action brought by the administrator to recover the stock. This, we should not do.

A painstaking examination of the record satisfies us that the trial court did not abuse its discretion in removing the appellants from office and substituting in their stead a disinterested administrator. Having reached this conclusion, we do not wish to embarrass a further hearing on the merits by the expression of an opinion as to the ultimate facts.

The order appealed from is affirmed.

BLAKE, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.